# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br><br>v.<br><br>DANIEL SANTIAGO<br>Defendant. | CR No. 12-161 M |

## MEMORANDUM AND ORDER

Before this Court is Defendant Daniel Santiago's Motion to Suppress (ECF No. 14) any and all evidence seized and statements given as a result of his arrest on November 1, 2012 including both the evidence seized from his person as well as the evidence seized from his residence.  Mr. Santiago has moved to suppress this evidence as fruit of the poisonous tree stemming from searches and seizures that were unconstitutional on the grounds that: 1) the warrant application did not support the inference of probable cause to believe that drugs, or other items related to the alleged drug-trafficking, would be found at Mr. Santiago's residence or on his person within the time period for the proposed search; 2) the exception allowing evidence obtained in good faith reliance on an invalid warrant to be admitted does not apply; and/or 3) the search warrant application contained material omissions that were made deliberately and/or with reckless disregard for the truth in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).[1]  After careful consideration, this Court GRANTS Mr. Santiago's Motion to Suppress the evidence seized in the residence and DENIES Mr. Santiago's Motion to Suppress the evidence seized from his person.

---

[1] This Court has previously denied Mr. Santiago's motion as to his third theory (*see* Text Order 4-10-13).

## I.    FACTS

On November 1, 2012 a Rhode Island State District Court Judge (State Court Judge) issued a search warrant in response to Providence Police Department Detective Jonathan Kantorski's sworn affidavit permitting the search of Daniel Santiago and his King Street residence for "heroin and articles relating to the use and or sale of narcotics and monies derived from the sale of narcotics." (ECF No. 16-2.) The warrant was issued based on the State Court Judge's determination that the facts set forth in the supporting affidavit were sufficient to establish probable cause that the named items would be found on Mr. Santiago's person and in his King Street residence. *Id.*

In his sworn affidavit, Det. Kantorski establishes that Mr. Santiago has listed his residence as the King Street address. *Id.* Det. Kantorski goes on to describe his investigation of Mr. Santiago that consisted of continual surveillance and, in particular, two separate "controlled purchase[s]" between a confidential informant (CI) and Mr. Santiago that he witnessed. *Id.* Det. Kantorski describes the CI as having aided in "several substantial narcotics seizures and numerous arrests in the past" and added that the CI has never intentionally provided false or misleading information. *Id.* In the affidavit, Det. Kantorski outlines how, on two occasions, he watched Mr. Santiago sell the CI an amount of heroin, get into a car (on the first occasion a 2001 green Honda, and on the second a 2006 silver Infiniti,) drive to the King Street residence, and enter through a side door using a key. *Id.*

After receiving the warrant, Det. Kantorski and Detective John Black observed Mr. Santiago approach the King Street residence in an Infiniti automobile. (ECF No. 16-1.) As the

detectives approached Mr. Santiago and identified themselves, Mr. Santiago allegedly "pulled packets of white powder from his pocket and tried to swallow them." (ECF No. 14.) The detectives then pushed Mr. Santiago to the ground and made him spit out the packets; the packets later tested positive for heroin. *Id.* The detectives then handcuffed Mr. Santiago and asked him several questions that he answered. *Id.* The detectives proceeded to search the entire King Street residence and seized heroin, a grinder, a digital scale, baggies, currency, cell phones, a bottle of Mannitol, and three flat screen televisions. (ECF No. 14-1.)

Mr. Santiago has moved to suppress the evidence found in the King Street residence and the evidence he allegedly spit out of his mouth.

## II.    ANALYSIS

### A. Probable Cause

To start, this Court must determine whether the State Court Judge who issued the warrant had probable cause to do so. This Court will defer to the judgment of the State Court Judge as to his finding that there was probable cause to believe that Mr. Santiago had committed the alleged offense and that Mr. Santiago had kept evidence related to that offense in his King Street residence.[2] However, this Court finds that the facts alleged in the affidavit were insufficient to support the inference of probable cause to believe that evidence material to the commission of the offense would be found at the King Street residence during the time period proposed for the search.

_____

[2] This Court finds these inferences reasonable given the facts attested in the warrant application and gives deference to such determinations by the warrant issuing judge. Specifically, because Det. Kantorski followed Mr. Santiago back to his residence after the two controlled purchases and, given the fact that the detectives knew he had monies derived from drug sales on his person at that time, this Court finds that at a minimum it was reasonable for the State Court Judge to infer that either drugs or monies derived from drug activity would be found at the King Street residence.

Under the Fourth Amendment, a judicial officer may not properly issue a warrant to search a private dwelling unless he can find probable cause from facts or circumstances presented to him under oath or affirmation. *Nathanson v. United States*, 290 U.S. 41, 47 (1933). In reviewing the sufficiency of an affidavit, "we consider whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search the premises." *United States v. Tiem Trinh*, 665 F.3d 1, 11 (1st Cir. 2011) (quoting *United States v. Barnard*, 299 F.3d 90, 93 (1st Cir. 2002)). Ultimately, this Court must ask whether the affidavit makes "'a practical, common-sense' determination as to whether, 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In reviewing the decision to issue a warrant, this Court affords "considerable deference to reasonable inferences the [issuing judge] may have drawn from the attested facts." *United States v. Zayas–Diaz*, 95 F.3d 105, 111 (1st Cir. 1996) (citing *United States v. Taylor*, 985 F.2d 3, 5 (1st Cir. 1993)).

Specifically, the facts alleged in a search warrant application must demonstrate probable cause to believe (1) that a particular person has committed a crime (the "commission" element); (2) that evidence material to the "commission" of the offense likely will be found at the place to be searched (the "nexus" element), *Zayas-Diaz*, 95 F.3d at 110-11 (citing *United States v. Fuccillo*, 808 F.2d 173, 175 (1st Cir. 1987), *cert. denied*, 482 U.S. 905 (1987)); and (3) that there is a "fair probability" that the nexus between the commission and the specific location exists "at about the time the search warrant would issue" (the "temporal" element), *id.* at 113 (citing *Sgro v. United States*, 287 U.S. 206, 210 (1932)).

Because this Court finds that the facts alleged in the affidavit supporting the search warrant at issue in this case meet the "commission" and the "nexus" elements, this Court will

focus its analysis on the "temporal" element.[3]   If the information alleged in a warrant application does not support a temporal nexus, then that information is considered stale and is not a valid basis for finding probable cause to issue the warrant. *See, e.g., id.*

In the present case, the warrant was issued based on Det. Kantorski's affidavit detailing the results of continued surveillance of Mr. Santiago.  Specifically, the affidavit describes two controlled heroin buys between a CI and Mr. Santiago.  The affidavit describes the transactions themselves (including the vehicles driven by Mr. Santiago), establishes the credibility of the CI, and also describes the police officers following Mr. Santiago back to his residence after the drug transactions and watching him enter the house through a side door.  This evidence is sufficient to support an inference of the first two elements of probable cause.

This Court is not satisfied that the affidavit establishes the third "temporal" element.  Nothing in the affidavit states when the controlled buys took place.  There is no time element whatsoever that even suggests a date or time frame for the alleged observed drug activity.

The only indicator of a time frame in the affidavit at all was the inclusion of a description of the car Mr. Santiago was driving:  a 2006 silver Infiniti.  This piece of information at most permits the inference that the activity described in the affidavit took place somewhere in the approximately six year window between 2006 and October 2012.  The only reasonable way for this Court to consider the timeliness of the information in the warrant application is to evaluate it as if it was six years old at the time the warrant was granted.

Establishing the date of the information is only a threshold matter.  "In evaluating a claim of staleness the Court does not simply count the days that have elapsed" but must instead assess "the nature of the information," the likelihood that it will endure, and "the nature and

---

[3] Mr. Santiago does not challenge the commission element and this Court has previously dealt with the nexus element. *See supra* note 1.

characteristics of the suspected criminal activity". *United States. v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (citing *United States v. Pierre*, 484 F.3d 75, 83 (1st Cir. 2007)). Evidence supporting a warrant is less likely to be stale when it demonstrates a pattern of drug trafficking activity. *United States v. Nocella*, 849 F.2d 33, 40 (1st Cir. 1988) (citing *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986)).

The evidence in this case has a longer lifespan because it demonstrates an established trend that supports the assumption that the drug-trafficking activity will continue. However, even in light of the *Morales-Aldahondo* balancing, this Court finds that in this case a six year lapse in time is too long to support a reasonable finding by the State Court Judge of a "fair probability" that the nexus between the commission and the specific location existed "at about the time the search warrant would [have] issue[d]." *Zayas-Diaz*, 95 F.3d at 113 (emphasis added). Because of the dearth of temporal information, this Court finds that the evidence presented in the affidavit was stale at the time the warrant was issued and that it therefore cannot support a probable cause determination. Without a reasonable inference of probable cause no valid warrant can be issued. The warrant in this case was invalid and therefore it did not justify the search of Mr. Santiago's person or his King Street residence.

B. The *Leon* Good-Faith Exception

This Court must next consider whether, even though the warrant was issued without probable cause, the evidence may nevertheless be admitted under the "good faith exception." The exclusionary rule bars the submission of evidence obtained in reliance on an invalid warrant unless the officer relying on the warrant acts in good faith in assuming the warrant is valid. *See United States. v. Leon*, 468 U.S. 897, 904, 921 (1984). An officer acts in good faith when he or she has objective "reasonable grounds" for believing that the warrant was property issued. *Id.* at

6

922-23.   An officer has objective "reasonable grounds" for believing that the warrant was properly issued when a "reasonably well trained officer" would have been oblivious to the illegality of the search.   *Id.* at 926.   Moreover, this Court must inquire into not only the "objective reasonableness" of the executing officers but also into the objective reasonableness of the "officers who originally obtained [the warrant]" as well.   *Id.* at 922 n.24.[4]   The good faith exception to the exclusionary rule only applies where the warrant was both applied for and executed in good faith.   *Id.*   Accordingly, "where the omission [from the affidavit] of a key ingredient, known to the law enforcement officers, leads to the subsequent invalidation of the warrant, the government faces a high hurdle in seeking to show objective good faith." *United States. v. Ricciardelli*, 998 F.2d 8, 16-17 (1st Cir. 1993).[5]

The good faith exception does not apply here.   This Court finds that based on its review of the warrant affidavit, Det. Kantorski could not have had objective "reasonable grounds" for believing that the warrant was properly issued.   *Leon*, 468 U.S. at 922, n.24.   Det. Kantorski presumably knew the dates of the controlled buys but nonetheless omitted those dates from the warrant application.[6]   This Court has found that Det. Kantorski's omission rendered the warrant invalid.   A "reasonably well trained officer" would have known that without this temporal information in the supporting affidavit, the issued warrant would be invalid.   Because

---

[4] An officer cannot prepare an inadequate affidavit and then simply rely on the facial sufficiency of the warrant itself to claim a good faith exception. *See id.*

[5] There is precedent for such a hurdle having been met. In *U.S. v. Brunette*, 256 F.3d 14, 19 (1st Cir. 2001), the First Circuit Court held that where the state of the law at the time the warrant was issued was unsettled as to the necessity of a material aspect of the warrant application, omission of that key element can be justified as objectively reasonable. However, in the present case, the law is settled on the importance of demonstrating that evidence of the alleged offense is likely to be found at the named location during the time allocated for the search. *Zayas-Diaz*, 95 F.3d at 110-11.

[6] Det. Kantorski was one of the officers who conducted the surveillance of the controlled buys, so it is a logical inference that he must have had at least some general idea as to when they took place.

7

Det. Kantorski omitted these key ingredients and because that omission subsequently led to the invalidation of the warrant itself, the Government fails to overcome the high hurdle in demonstrating Det. Kantorski's objective "good faith" in applying for and executing the warrant. *See Ricciardelli*, 998 F.2d at 16-17.

One of the purposes of the exclusionary rule is to encourage improvements to the standard of police work practiced by the departments involved in the illegal search, and the good faith exception only applies where it does not obstruct that goal. *See United States v. Peltier*, 422 U.S. 531, 539 (1975) (quoting *Michigan v. Tucker*, 417 U.S. 433, 446 (1974)). This Court will not admit the evidence in question because to do so would not only ignore but explicitly undercut this express purpose. In this case, the warrant application was submitted without fundamentally important pieces of information which, based on the level of detail surrounding these controlled buys, was readily available to Det. Kantorski and the police departments involved. While this Court could not find that the police department recklessly or intentionally withheld the relevant dates from the issuing Magistrate Judge, this does not mean that the officers acted in good faith such that the *Leon* exception should apply. The correct standard to apply in a good faith determination is that of a reasonably well-trained officer. For this Court to find that this standard was met in this case would at best discourage affidavits containing the necessary factual predicate for the issuing court to make a determination of probable cause. At worst such a decision would create a massive hole in the protections guaranteed by the Fourth Amendment and could encourage future police departments to obscure the staleness of critical information by excerpting times and dates from their applications for warrants.

### C. Mr. Santiago's Statements

Mr. Santiago argues that the statements he made to police immediately after he was placed in handcuffs were not made freely, voluntarily, or without compulsion. In light of this Court's finding that the warrant was invalid, Mr. Santiago's argument concerning his statements is superfluous because the evidence he argues was borne out of those statements is no longer relevant.

### D. Search not Incident to a Lawful Arrest

In order to make a lawful arrest a police officer must have probable cause to reasonably believe that the suspect has committed or is in the process of committing a crime. *United States v. Bizier*, 111 F.3d 214, 216-17 (1st Cir. 1997). The government must demonstrate that "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *Id.* (quoting *United States v. Cleveland*, 106 F.3d 1056, 1060 (1st Cir. 1997)).

As a general rule, an officer may not conduct a search without a warrant. *See Katz v. United States*, 389 U.S. 347, 357 (1967). However, this general rule is subject to a number of clearly defined exceptions. *Id.* One such exception applies when the search is incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 339 (2009). These searches are justified to protect the purpose behind the arrest; specifically, these searches are intended to prevent the suspect from destroying critical evidence. *Id.* at 332. A search incident to a lawful arrest is limited to the suspect's person and his immediate area. *Id.* at 339 (citing *Chimel v. California*, 395 U.S. 752 (1969)).

In *Bizier*, the First Circuit found that all of the law enforcement officers involved in the surveillance of a defendant had probable cause to arrest him because they knew about or had

witnessed two controlled buys between the defendant and a CI. *Bizier*, 111 F.3d at 219. In this case, just like in *Bizier*, Det. Kantorski had probable cause to arrest Mr. Santiago because he had witnessed the two controlled buys.[7] Having witnessed this activity supported his reasonable belief that Mr. Santiago had engaged in criminal activity. Because the arrest of Mr. Santiago was a lawful one, Det. Kantorski and Det. Black were within their authority to search Mr. Santiago once he was secured in order to prevent him from destroying critical evidence. In this situation Mr. Santiago allegedly attempted to destroy or conceal evidence by attempting to swallow multiple packets of white powder before he was restrained.

Finally, even if this Court had found otherwise, when the detectives approached Mr. Santiago and identified themselves, according to the government, Mr. Santiago voluntarily produced the suspected heroin and attempted to swallow it. When the detectives saw this behavior they had independent probable cause to reasonably believe Mr. Santiago was engaging in criminal activity. In other words, Mr. Santiago provided the detectives with cause to arrest him when he engaged in the two buys, and then later provided further cause for his arrest when he attempted to swallow the heroin in plain view of the detectives.

Although the search warrant issued by the State Court Judge was invalid, Det. Kantorski and Det. Black nonetheless executed a legal search and seizure when they arrested Mr. Santiago. Therefore, this Court finds that any evidence seized from Mr. Santiago's person is admissible at trial.

---

[7] Det. Kantorski's surveillance of the two drug transactions formed a sufficient basis for a finding of probable cause to arrest Mr. Santiago, even though the description of this surveillance was not sufficient to establish probable cause for the State Court Judge to issue a search warrant because it lacked the temporal element required to support probable cause for a search of his residence.

### III. CONCLUSION

Because the State Court Judge had no reasonable basis from which to infer probable cause to believe that drugs and drug related articles would be found at the King Street residence or on Mr. Santiago's person at the time of the proposed search, the warrant issued on November 1, 2012 was invalid. Furthermore, because a reasonable officer would have known that an affidavit lacking essential temporal information was not sufficient grounds on which to grant a search warrant, the good faith exception does not apply because the detective did not act in accordance with the standard of a reasonably well trained officer applying for and executing the warrant. Therefore, this Court GRANTS Mr. Santiago's motion to suppress any evidence found as a result of the search of the King Street residence.

However, because Det. Kantorski witnessed the two controlled buys between Mr. Santiago and the CI, the arrest of Mr. Santiago on November 1, 2012 was legal and the search of his person was authorized as incident to a lawful arrest. Therefore, this Court DENIES Mr. Santiago's motion to suppress any and all evidence found on his person on November 1, 2012 and finds that all such evidence is admissible at trial.

Mr. Santiago's Motion (ECF No. 14) is therefore GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED

John J. McConnell, Jr.
United States District Judge
June 18, 2013