UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | CR No. 12-161 M |
| | ) | |
| DANIEL SANTIAGO | ) | |

DANIEL SANTIAGO'S MEMORANDUM IN AID OF SENTENCING

The year 1992 was filled with life-changing events for 14-year old Danny Santiago. That was the year his mother died suddenly. See PSR ¶ 44. That was the year he first consumed alcohol. It was the year he first smoked marijuana. Id. ¶¶ 52, 53. The year he garnered his first criminal conviction. The year the Family Court found him to be "delinquent" and ordered him to serve 6 months in a juvenile detention facility. See PSR ¶ 23.

According to the juvenile center's records, Danny was not a behavioral problem. He was (just as his the mother of his children describes him to be today) "extremely controlled, mature, good natured and quiet." PSR ¶ 45; see Letter of Dallamantty Rodriguez. He was also suffering from enormous emotional pain. The records describe a young boy whose involvement in criminal activity was due to his mother's sudden death and the absence of his father. See id. ¶ 45. While in the juvenile detention center, he tried to deal with the grief of losing his mother by attending weekly counseling sessions. He also displayed an "intense desire to be rehabilitated." See id. ¶ 51. It was not the life he wanted.

Upon his release from the detention center, Danny went to live with a man whom his mother had married prior to her death. See id. ¶ 44. That man abused cocaine, marijuana and alcohol. See id. ¶ 46. Statistically, Danny didn't have a chance.[1] Unless someone intervened

---

[1] According to the U.S. Department of Health & Human Services, "Adolescents whose parents have [substance use disorders (SUDS)] are more likely to develop SUDs themselves. Some adolescents mimic behaviors they see in their families, including ineffective coping behaviors such as using drugs and alcohol. Many of these children also witness or are victims of violence. It is hypothesized that substance abuse is a coping mechanism for such traumatic events. Moreover, adolescents who use substances are more likely to have poor academic performance and to be involved in criminal activities. The longer children are exposed

with some radical plan for his education and future, Danny would likely end up subsisting on a life a crime.

No one intervened.

Danny graduated from marijuana to cocaine, from cocaine to heroin. See id. ¶¶ 52-54. He supported his addiction by selling drugs, and garnered a drug conviction history as a result. See PSR, Part B.  By the time he was arrested in this case, he was snorting 1.5 grams of heroin a day. Id.

On October 1, 2013, thirty-five year old Daniel "Danny" Santiago will appear before this Court for sentencing, following his guilty plea conviction for possession of .96 of a gram of heroin.  The non-binding Federal Sentencing Guidelines recommend a term of imprisonment of 12 to 18 months and he asks the Court to sentence him within that range. Pursuant to the plea agreement filed in this case, the government will likely seek the same.

Mr. Santiago anticipates that, at the upcoming sentencing hearing, the government will also emphasize his drug trafficking history and devalue the rest of his life experiences, as if the drug trafficking appeared from a contextual nowhere, as if it was the life he wanted, as if he had a smorgasbord of choices and simply opted for the wrong ones.

While Mr. Santiago knows he must be punished, he hopes that this Court will consider that, despite the tragedies experienced during his own childhood, he has helped raise three well adjusted and high achieving children, two of whom are teenagers, one on the verge of adolescence, and all of whom need their father in their lives.  According to Dallamantty Rodriguez (the children's mother), Mr. Santiago "is a good father and has always taught [the] children good from bad." See Letter of Dallamantty Rodriguez.  He has taught them to pursue an education "because without education they will get nowhere in life." Id.   She also reports, that, "[a]s a boyfriend [Danny] was great[,] always supportive with my education, career decisions and my employment." Id.  The man Dallamantty has known for the last 15 years "is not a violent man." Id. She writes that he is actually "the most passive patient person I have ever

---

to parental SUD, the more serious the negative consequences may be for their overall development and well-being." Available at https://www.childwelfare.gov/pubs/usermanuals/substanceuse/chapterthree.cfm, last visited September 24, 2013.

met," a person with "a good heart" and "a great dad that's why our children love him." Id.

Due in large part to an untreated drug addiction that has spun his life out of control, Mr. Santiago is facing federal prison and the prospect of a lengthy state prison term for sustaining the underlying conviction while on state supervision. Recognizing that he must be punished for his misconduct, Mr. Santiago asks this Court to impose a sentence within the advisory Guidelines range. He also asks the Court to impose a sentence that takes into consideration his need for rehabilitation. See 18 U.S.C. § 3553(a).

The U.S. Supreme Court has made it clear: while prison is a means of punishment, it is not a means of promoting a person's rehabilitation. See Tapia v. United States, ––– U.S. –––, 131 S.Ct. 2382, 2389 (2011) (instructing sentencing courts that imprisonment is not an appropriate means of pursuing the goal of rehabilitation).

Here, it is undisputed that Mr. Santiago's drug addiction has gone untreated for years. See PSR ¶ 54. As he seeks to recover from years of addiction, including a 1.5 gram a day heroin habit, he will require intensive treatment that he cannot obtain in prison.[2] While the United States continues to incarcerate more people for drug offenses than any other country in the world,[3] the federal prison system is ill-equipped to help the estimated 6.8 million Americans, like Danny Santiago, who struggle with drug abuse or dependence.[4] For example, according to the

---

[2] Drug addiction, termed substance abuse, is a recognized mental health disorder. According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) it is a collection of cognitive, behavioral, and physiological symptoms involving an individual's continuing to use a substance despite significant substance related problems, such as being caught driving under the influence, repeated black outs, court involvement, etc. Courts recognize that "[t]he process [of recovery] is gradual and trying, requiring both mental and physical support," United States v. Maier, 777 F.Supp. 293, 294 (S.D.N.Y. 1991), and that "it is not likely that anyone who has abused drugs for as many years as [defendant] would be able immediately to abandon all aspects of his former life, regardless of his good intentions." United States v. Kane, 88 F.Supp.2d 408, 412 (E.D. Pa. 2000).

[3] The Pew Ctr. on the States, One in 100: Behind Bars in America 5 (2008), available at http://www.pewtrusts.org/uploadedFiles/wwwpewtrustsorg/Reports/sentencing_and_corrections/one_in_100.pdf.

[4] See U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration, Office of Applied Studies. 2005 National Survey on Drug Use & Health: Detailed Tables. Table 5.1A, available at

Government Accountability Office (GAO), the relatively small group of federal inmates who are selected for the Bureau of Prison sponsored Residential Drug Abuse Program (RDAP), are languishing on waiting lists that number into the thousands.  The GAO reports that, in fiscal year 2012, there were 4,807 inmates on the waiting list for RDAP and 9,825 waiting for non-residential drug treatment.[5]  Thus, even if this Court were to recommend Mr. Santiago for RDAP, it is not likely that he would be able to take advantage of the program.

According to the Justice Policy Institute (JPI),[6] "[d]iverting people from prison and jail into therapeutic settings such as drug treatment can lower prison and jail populations, alleviating some of the overcrowding experienced by many states and freeing up corrections spending for more effective investments in public safety. Drug treatment is both less expensive than prison and more effective at reducing recidivism, drug abuse, and crime."[7]   Citing various government-funded studies, JPI has found that, "[a]lthough drug treatment in prison or jail can be a means of reducing the chances that a person will commit crime in the future, community-based treatment is more effective and helps people reintegrate themselves into the community."[8]

---

www.drugabusestatistics.samhsa.gov/NSDUH/2k5NSDUH/tabs/Sect5peTabs1to82.htm#Tab5.1A.

[5]  See U.S. Govt. Accountability Office, Report to Congressional Requesters, Bureau of Prisons, Timelier Reviews, Plan for Evaluations, and Updated Policies Could Improve Inmate Mental Health Services Oversight, p. 48. Available at http://www.gao.gov/assets/660/655903.pdf.

[6]  The Justice Policy Institute is a national nonprofit agency that conducts research and analyses to identify programs and policies that may reduce incarceration. See http://www.justicepolicy.org/About1.html.

[7]  See JPI, "Substance Abuse Treatment and Public Safety," p. 6 (January 2008). Available at http://www.justicepolicy.org/images/upload/08_01_rep_drugtx_ac-ps.pdf. Last visited September 24, 2013; see also id. ("JPI analyzed data from the Treatment Episode Data Set (TEDS) and the Bureau of Justice Statistics and found that states with higher drug treatment admission rates had lower incarceration rates than states with lower admission rates. For example, Rhode Island has a treatment admission rate that is eight times higher than Idaho's and at the same time an incarceration rate that is two and a half times lower.").

[8]  See id. at 11.  See also Volkow, Nora D., Director of the National Institute on Drug Abuse,  2006. Treat the addict, cut the crime rate. Washington Post, August 19. Editorial,

As the Court considers what sentence would be minimally "sufficient but not greater than necessary" to achieve the broad goals of sentencing in this case, see 18 U.S.C. § 3553(a), Mr. Santiago asks the Court to consider a residential treatment center focused on addiction treatment and rehabilitation, rather than a lengthy prison term that serves no rehabilitative ends.

Respectfully Submitted
Daniel Santiago,
By and through his counsel

*/s/ Tara I. Allen*
Tara I. Allen, MA Bar #641687
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
tara_allen@fd.org

CERTIFICATION

I hereby certify that I electronically filed and served a copy of this Memorandum on Stephen Dambruch, Assistant U.S. Attorney, on September 24, 2013.

*/s/ Tara I. Allen*
Tara I. Allen, MA Bar #641687
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281
FAX 528-4285
tara_allen@fd.org

---

A17 ("Studies have consistently shown that comprehensive drug treatment works. It not only reduces drug use but also curtails criminal behavior and recidivism. Moreover, for drug-abusing offenders, treatment facilitates successful reentry into the community.") Available at http://www.washingtonpost.com/wp-dyn/content/article/2006/08/18/AR2006081800799.html.